IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOHNNY DWIGHT HOUSTON, JR.,<br>Institutional ID No. 82818,<br><br>      Plaintiff,<br><br>v.<br><br>TAYLOR COUNTY JAIL, *et al.*,<br><br>      Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:23-CV-00145-BU |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Johnny Dwight Houston, a pretrial detainee at Taylor County Jail (TCJ), brings this action against Defendants TCJ, Correct Solutions, and Central Processing Facility for Jailatm.com (collectively, "the Defendants"), alleging that they violated his constitutional rights. Houston's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Houston has been granted leave to proceed *in forma pauperis*, Dkt. No. 8, and he sues government officials, *see* Dkt. No. 1. For the reasons below, the Court should find that Houston's claims SURVIVE judicial screening in part and should be DISMISSED in part without prejudice.

## I. JURISDICTION

Houston brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1. Venue is proper in the Northern District of Texas, Abilene Division, because Houston's claims arise from his incarceration

at TCJ located in Taylor County, Texas. 28 U.S.C. § 1391(b)(2). Senior United States District Court Judge Sam R. Cummings transferred Houston's case to the undersigned for preliminary screening. Dkt. No. 9; 28 U.S.C. § 636(b)(1)(B).

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favors the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, questionnaire responses, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

Houston was incarcerated at TCJ while he awaited trial. Dkt. No. 16 at 1. Houston's claims arise from the following three incidents: (1) TCJ's institution of an electronic mail system, (2) Correct Solutions, TCJ's telephone service provider, increasing the rates for outgoing detainee calls, and (3) an electrical shock Houston received from a TCJ phone. The undersigned will describe the facts surrounding each claim below.

### A.  Electronic Mail System

Houston states that TCJ implemented a new system which only allows inmates to receive their mail electronically. Dkt. No. 1 at 16. TCJ entered a contract with Tech Friends Inc., which provides the digital mail service through its Jailatm.com platform. Dkt. No. 21 at 2. Individuals who wish to send mail to a TCJ detainee must send the contents to a

2

Jailatm.com processing facility. Dkt. No. 1 at 16. Central Processing then scans the mail's contents and uploads the material to its digital platform. Dkt. No. 1 at 16. Once scanned, Central Processing destroys the physical copy without providing the inmate recipient an option to preserve the physical copy. Dkt. No. 1 at 24. All personal inmate mail, including personal photographs, is subject to this process; only legal mail, magazines and newspapers are exempted. Dkt. Nos. 1 at 24, 16 at 4.

Inmates can access the Jailatm.com digital platform and view the digital scans of their mail using a tablet available in TCJ facilities. Dkt. No. 1 at 16. The scanned mail is available for viewing for two weeks after which it is permanently deleted; only legal mail is exempt from the two-week limit. Dkt. No. 1 at 16. It can take anywhere from fourteen to thirty days for an inmate to receive the digital version of their mail. Dkt. No. 1 at 16. According to Houston, this triples the typical wait time he experienced when receiving his regular mail. Dkt. No. 1 at 16.

Houston reports that he has received other inmates's mail through the platform and, at times, his uploaded mail has been missing photographs despite the accompanying letter stating that a picture was enclosed. Dkt. No. 1 at 24. To contact Jailatm.com, the inmates must send complaints through postal mail at their own expense; they do not have the option to contact the company through the electronic platform. Dkt. No. 1 at 24. The company has been unresponsive to Houston's complaints. Dkt. No. 1 at 24. The Jailatm.com platform is also unreliable, as inmates encounter issues with "tablets cutting off" and other "issues with our gold passes[.]" Dkt. No. 1 at 17. TCJ refuses to address these issues and directs inmates to contact Jail Standards in Austin, Texas. Dkt. No. 1 at 17. This instruction is inconsistent

3

with the TCJ rule book, which states that violations of an inmate's constitutional rights may not be addressed by Jail Standards. Dkt. No. 1 at 17.

Jailatm.com also provides a digital messaging service as an alternative to scanned mail; users may send a message for 50 cents, which costs less than the postage stamps available to inmates. Dkt. No. 1 at 24. Inmates are allowed to view their mail and messages for free for 15 minutes every three hours, or an outside user can purchase a 99 cent "gold pass" for the inmate that grants "an hour of free access to all [the service] offers." Dkt. No. 1 at 24. However, the system does not indicate how much time is left on an active gold pass or give the inmate a warning before the hour is up, unlike the free fifteen-minute version which provides a one-minute warning. Dkt. No. 1 at 24. If an inmate has multiple gold passes, the system will automatically begin to use the next gold pass once the prior pass expires without giving the inmate any warning. Dkt. No. 1 at 24. In addition, inmates cannot access the free fifteen-minute viewing option until they have used all of their gold passes. Dkt. No. 1 at 24.

### B.  Price of Telephone Services and Commissary Fees

Correct Solutions, a private company, provides phone services at TCJ. Dkt. No. 1 at 17. During Houston's incarceration, Correct Solutions increased the price it charges for a twenty-minute phone call three times. Dkt. No. 1 at 14. He claims a twenty-minute phone call that initially cost $6.20 now costs $8.65. Dkt. No. 1 at 23. Further, Houston claims Correct Solutions is "monopolizing the phone system" and charging $5.00 for out of state phone calls. Dkt. No. 1 at 14 (cleaned up). Under this pricing system, it is cheaper for an inmate to place an out-of-state call than to place a call to someone within Taylor County.

Dkt. No. 16 at 7.

Correct Solutions also provides the system for relatives to place money in an inmate's commissary or phone account. Dkt. No. 1 at 14. An individual may place money in an inmate's account either in person at TCJ or online. Dkt. No. 1 at 14. Making a deposit in person now costs $5.00, up from the prior $3.00 fee; the same service costs only $2.00 when depositing funds through Correct Solution's website. Dkt. No. 1 at 14. Houston's mother chooses to pay through TCJ's customer service because she is not familiar with technology; as a result, she is being charged $5.99 or up to $8.99 to transfer funds into Houston's account. Dkt. No. 1 at 14, 23. Houston claims these prices change without proper notice to inmates or their families. Dkt. No. 1 at 14.

**C. Safety of Inmate Phones**

On April 8, 2023, Houston put in a work order indicating that "[their] phone had a short in the cord and the 2nd phone was not working at all." Dkt. No. 1 at 23. The same day, Houston received confirmation that TCJ would place a work order for the phone. Dkt. No. 1 at 20, 23. At around the same time, all the other phones in the jail stopped working. Dkt. No. 1 at 23. On or about April 18, 2023, Correct Solutions went to TCJ to fix their phones. Dkt. No. 1 at 23. Correct Solutions's personnel fixed each of the phones, but did not fix the phone cord with the short in it. Dkt. Nos. 1 at 23, 16 at 3, 7. The phone cord remained in this condition for two weeks. Dkt. No. 16 at 2.

On April 23, 2023, Houston was using the damaged phone when it shocked him and "blew the breaker." Dkt. No. 1 at 23. Though TCJ attempted to replace the phone that shocked Houston, the replacement and the other phones remained unusable because of the

5

blown breaker. Dkt. Nos. 1 at 23, 16 at 8. Because this happened on a weekend, Houston had to wait until Monday for maintenance to come and flip the breaker. Dkt. No. 1 at 23. Even afterwards, the replacement phone was "messed up" for a few weeks before Taylor County finally installed a working replacement. Dkt. No. 16 at 8.

Further, Houston alleges that the cord on the visitation monitor "is the same headset, phone cord that is attached to the phones and every housing unit used by Taylor County Jail, Correct Solution and Central Processing facility." Dkt. No. 16 at 5. The design of the cord places electric wires inside of metal, instead of casing the wires inside of rubber. Dkt. Nos. 1 at 23, 16 at 5.

### III.  THE PARTIES

Houston filed the present lawsuit on June 21, 2023. Dkt. No. 1. In his Complaint, Houston names the following defendants: (1) Taylor County Jail, (2) Correct Solutions Phone Service, also known as csgpay.com or regentpay.com, and (3) Central Processing Facility for Jailatm.com (Central Processing). Dkt. No. 1. Houston supplemented his claims through his responses to this Court's questionnaires. Dkt. Nos. 16, 23. In one such response, Houston also brought claims against an unnamed Sergeant at TCJ. Dkt. No. 16 at 2.

Liberally construing his allegations, Houston's claims against each party can be summarized as follows. Houston brings several claims against Correct Solutions based on its phone services, such as "[e]xtorting; monopolizing; price gouging without proper notice; [and] bad business[.]" Dkt. No. 1 at 4 (cleaned up). Houston also seeks to hold Correct Solutions liable for failing to perform "preventative maintenance" on its phones at

TCJ, particularly the one that shocked him in April 2023. Dkt. No. 1 at 4.

Next, Houston brings claFims against Central Processing based on its digital mail services, alleging that the corporation violated his First Amendment rights, federal common law, and the mailbox rule. Dkt. No. 1 at 4. Houston also brings a negligence claim against Central Processing for errors in the system, such as incorrectly delivering mail to the wrong recipient or failing to attach pictures sent by family members. Dkt. No. 1 at 24.

Against TCJ, Houston brings a First Amendment claim based on implementation of the digital mail system, as well as an Eighth Amendment deliberate indifference claim and a negligence claim based on defects in inmate phone infrastructure. Dkt. No. 1 at 4. Lastly, Houston brings deliberate indifference and negligence claims against the unnamed TCJ Sergeant for failing to place the work order and remedy the phone's cord prior to it shocking him. Dkt. No. 16 at 2.

The detention center named as a defendant in Houston's Complaint, referred to as Taylor County Jail in the Complaint, is Taylor County Adult Detention Center (TCADC). Dkt. No. 21 at 1. Because TCADC is a nonjural entity and may not be sued, the Court construes Houston's allegations against TCADC as claims against Sheriff Ricky Bishop in his official capacity as TCADC administrator.[1] **The Clerk is directed to terminate Taylor**

---

[1] A party in a legal lawsuit must have the capacity to be sued. Fed. R. Civ. P. 17(b). The ability to sue a county is determined by the law of the state in which the district court sits. *Id*. Texas law only permits an action against an entity if it has been granted the capacity "to sue or be sued*." Blodgett v. Grayson Cnty.*, 2024 U.S. Dist. LEXIS 49971, *11 (quoting *Dillard v. Jefferson Cnty. Sheriff's Dep't*, 973 F.Supp. 626, 627 (E.D. Tex 1997). A plaintiff may not sue a county agency absent the true political entity explicitly giving the servient agency jural authority. *Id*. Therefore, a plaintiff can only sue an agency that possesses "a separate and distinct legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313.

**County Jail as a party and add Sheriff Bishop as a defendant.**

The company TCADC contracted with to provide digital mail services, referred to as Central Processing Facility for Jailatm.com in the Complaint, is Tech Friends, Inc. (Tech Friends). Dkt. No. 21 at 2. **The Clerk is directed to terminate Central Processing Facility for Jailatm.com as a party and add Tech Friends, Inc. as a defendant.**

## IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma pauperis* or filed by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted

8

have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or statements of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–679). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there

are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V. ANALYSIS

To state a claim under § 1983, Houston must plausibly "allege facts showing that a person, acting under color of state law, deprived him of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). When an incarcerated person claims a violation of his federally protected rights, the source of that claim flows from different constitutional provisions depending on whether the person has been convicted or not. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

A convicted prisoner's rights "spring from the Eighth Amendment's prohibition on cruel and unusual punishment" and, in extreme situations, the substantive due process provision of the Fourteenth Amendment. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104

(1976). By contrast, a pre-trial detainee's right to be free from unlawful pre-conviction punishment is protected by both the procedural and substantive provisions of the Fourteenth Amendment's Due Process Clause. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979). Because Houston was a pretrial detainee at the time his claims arose, his rights to basic human needs were secured by the Fourteenth Amendment of the United States Constitution. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *see also Hare*, 74 F.3d at 639.

Pretrial detainees may bring Fourteenth Amendment claims under two alternative theories: (1) an episodic-act-or-omission claim or (2) a condition-of-confinement claim. *Hare*, 74 F.3d at 644–45; *see also Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). An episodic-act-or-omission claim "faults specific jail officials for their acts or omissions." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 463 (5th Cir. 2015) (internal quotation omitted). For these claims, the pretrial detainee must show that the official acted with subjective deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it").

By contrast, a condition-of-confinement claim alleges that a general condition of confinement within a jail operates as an unconstitutional pattern or policy. *See Shepard*, 591 F.3d at 452. In this situation, the policy or practice that allows the condition to exist is presumptive evidence of subjective intent on the part of the state or the officials who implement it. *Hare*, 74 F.3d at 644. Thus, the official's state of mind is not in question.

11

The inquiry instead focuses on whether the detainee can establish: (1) a rule, policy, or sufficiently pervasive pattern or practice,[2] (2) that was not reasonably related to a legitimate governmental objective, and (3) that caused a violation of the detainee's constitutional rights. *Duvall v. Dallas County, Texas*, 631 F.3d 203, 207 (5th Cir. 2011).

With these standards in mind, the Court now turns to Houston's present claims. Two of the named defendants, Correct Solutions and Tech Friends, Inc., are private entities. Accordingly, the Court must first determine whether these defendants qualify as state actors under § 1983 and the Fourteenth Amendment. The Court will then proceed to analyze Houston's claims against Sheriff Bishop and the unnamed Sergeant. To the extent either Correct Solutions or Tech Friends are state actors, the Court will also evaluate Houston's claims against each entity.

### A. Whether Correct Solutions and Tech Friends qualify as state actors

Under both § 1983 and the Fourteenth Amendment, which are applicable to pretrial detainees, the plaintiff must establish that the defendant is a state actor. The standards for establishing state action for a civil rights claim and a Fourteenth Amendment claim are identical. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, 102 S. Ct. 2744, 2749, 73 L. Ed. 2d 482 (1982).

---

[2] This is the same test for determining the existence of a policy or practice under *Monell*. And as with *Monell* liability, a policy can be express or reflected in an "unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas County*, 591 f.3d 445, 452 (5th Cir. 2009) (quoting Hare, 74 F.3d at 645). But "[p]roving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Id*.

An individual or entity is a state actor if they are a state official, if they acted in concert with state officials, or if their conduct is otherwise attributable to the state. *Doe v. Steward Health Care Sys. LLC*, No. 4:18-CV-00394, 2018 WL 4233816, at *4 (S.D. Tex. July 31, 2018), *report and recommendation adopted*, No. 4:18-CV-394, 2018 WL 4232921 (S.D. Tex. Sept. 5, 2018). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted).

When determining whether a private entity qualifies as a state actor, a court must first identify the specific conduct underlying the plaintiff's complaint. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005). The Supreme Court has articulated four tests to determine whether a private entity acted under the color of state law. *Id.* at 549–50; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). These tests are (1) the public function test, (2) the state compulsion test, (3) the nexus or state action test, and (4) the joint action test. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241–42 (5th Cir. 1999).

Under the public function test, a private entity is a state actor if "that entity performs a function which is traditionally the exclusive province of the state." *Id.* (quoting *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989). Courts recognize that, though the government has traditionally performed a wide array of functions, very few of these services can be categorized as exclusively reserved to the State. *Id.* (quoting *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 158 (1978)). Under the state compulsion test, a private entity is a state actor if the State either overtly or covertly exerted a coercive power over the private entity's conduct or significantly encouraged the private entity's actions. *Bass*, 180 F.3d at 242.

13

Under the nexus or state action test, a private entity is a state actor if the State has made itself interdependent with the private entity, to the degree that the State was a "joint participant in the enterprise." *Cornish*, 402 F.3d at 550 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974). Finally, a private entity is a state actor under the joint action test if the entity is a "willful participant in joint action with the state or its agents." *Dennis v. Spark*, 449 U.S. 24, 27 (1980).

### 1. *Correct Solutions*

As detailed above, the Court's analysis of Correct Solutions's status as a state actor starts by first identifying the specific conduct Houston complains of. Here, Houston's claims against Correct Solutions arise out of their conduct as a telephone service provider to TCADC inmates.

Correct Solutions is not a state actor under the public function test because providing phone service is not a traditionally exclusive government function. *Streater v. Thaler*, No. 9:11CV68, 2012 WL 3308109, at *13 (E.D. Tex. July 2, 2012), *report and recommendation adopted*, No. 9:11CV68, 2012 WL 3308105 (E.D. Tex. Aug. 13, 2012) (citing *Evans v. Skolnik*, CV No. 3:08cv353, 2009 WL 3763041 (D. Nev. 2009)). Correct Solutions is also not a state actor under the state compulsion test because Houston's Complaint does not allege that TCADC had any control over Correct Solutions's fee structure or maintenance polices, let alone the degree of coercive influence required. Even if TCADC did regulate their procedures, this would not be sufficient to satisfy the state compulsion test. *See Jackson*, 419 U.S. at 351 ("[T]he fact that telephone companies are subject to substantial governmental regulation does not convert their actions into that of the state.").

14

Similarly, Houston's Complaint does not provide any factual support to satisfy the state action or joint action tests, as Houston has failed to allege that TCADC and Correct Solutions are engaged in a joint enterprise or joint action. Houston instead argues that Correct Solutions's actions can be attributed to the state because of their contract with TCADC. However, "the mere existence of a contract" is not sufficient to hold an otherwise private entity liable as a state actor. *See Streater*, 2012 WL 3308109, at *13; *Keaghey v. Securus Techs. & T-Netix Inc.*, No. CV 19-12899, 2020 WL 5413581, at *2 (E.D. La. Aug. 7, 2020), *report and recommendation adopted sub nom. Keachey v. Securus Techs.*, No. CV 19-12899, 2020 WL 5411735 (E.D. La. Sept. 9, 2020) (finding that defendants who "created, operated, or designed the phone system" at the prison were not state actors). Accordingly, Houston has not adequately plead that Correct Solutions is a state actor for purposes of § 1983.

Because Houston has failed to allege that Correct Solutions was acting under the color of state law, the undersigned RECOMMENDS that the Court DISMISS all claims against it for failure to state a claim.

### 2. Tech Friends

Houston also brings constitutional claims against Tech Friends under § 1983. Here, the relevant conduct by Tech Friends centers on the digital mail and messaging services it provides to TCADC inmates.

Tech Friends is not a state actor for the same reasons that Correct Solutions is not. While the 5th Circuit has never addressed whether mail delivery services are traditionally

an exclusive state function, cases from other jurisdictions suggest that Tech Friends's work–which is limited to scanning and electronically hosting mail–does not meet that bar.[3] Thus, the undersigned is persuaded that Tech Friends is not a state actor under the public function test. Tech Friends is also not a state actor under the state compulsion test because Houston fails to allege any degree of TCADC control over Tech Friends's operations. Lastly, Tech Friends is not a state actor under the state action or joint action tests because Houston has not alleged that TCADC and Tech Friends are engaged in any joint enterprise or joint action.

Houston instead argues that Tech Friends qualifies as a state actor because the state "allowed this private conduct . . . to come into and be enjoyed with the state . . . by allowing them as authority and also rights over our mail which is backed by federal common law and mailbox rules." Dkt. No. 16 at 4. However, the fact that Tech Friends provided mail related services does not transform it into a state actor. *See Jackson v. Barrick*, No. 6:23-CV-617-JDK-JDL, 2024 WL 1234950, at *1 (E.D. Tex. Mar. 22, 2024). The court in *Jackson* rejected that very argument when finding that a private corporation was not

---

[3] The Ninth Circuit Court of Appeals affirmed that an RV resort was not performing a public function by operating a mail room where residents can retrieve mail delivered by USPS and other private carriers, such as Federal Express. *Snowdon v. Preferred RV Resort Owners Ass'n*, No. 208CV01094RCJPAL, 2009 WL 10690926, at *3 (D. Nev. Apr. 1, 2009), *aff'd,* 379 F. App'x 636 (9th Cir. 2010). The district court noted that the resort did not host a USPS office on the premises, nor did they deliver mail to residents. *Id.* By comparison, the Second Circuit Court of Appeals held in *Cooper v. U.S. Postal Serv.* that a private entity operating as a Contract Postal Unit (CPU) under USPS was a state actor because it benefited from USPS's "complete monopoly" to "accept and process mail, sell postal products, and . . . participate in the safe carriage of mail." *Cooper v. U.S. Postal Serv.,* 577 F.3d 479, 492–93 (2d Cir. 2009).
The services provided by Tech Friends–receiving and storing mail to be retrieved by their users–are more analogous to the mail room in *Snowdon* than the CPU in *Cooper*. That Tech Friends also has no alleged affiliation with USPS, and thus does not benefit from USPS's "complete monopoly" *Cooper* CPU did, further supports this conclusion. *Id.*

providing a government function simply because its services related to the inmate's fundamental right to receive mail. *Id*. Because Houston does not plead any other facts to support a finding that Tech Friends was a state actor, he fails to state a claim against it under § 1983.

For these reasons, the undersigned RECOMMENDS that the Court DISMISS all claims against Tech Friends, Inc. for failure to state a claim.

### B. Whether Houston has stated a claim against Sheriff Bishop based on the digital mail system

Houston asserts two claims against Sheriff Bishop in his official capacity based on implementation of the Jailatm.com mail system: a First Amendment claim and a property deprivation claim.

#### 1. First Amendment Claim

Houston alleges that TCADC's adoption of the electronic mail system violates his First Amendment rights. He claims that the system is unconstitutional because (1) it allows him to only access his mail digitally rather than physically, (2) it creates a substantial delay in the time it takes for him to receive his mail, and (3) it deletes his mail after two weeks, preventing him from permanently possessing his mail. Houston's claims are properly characterized as condition of confinement claims.

To establish a condition-of-confinement claim, Houston must show "(1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . ; (2) which was not reasonably related to a legitimate government objective; and (3) which caused the violation of his constitutional rights." *Duvall v. Dallas County, Tex.*, 631 F.3d

203, 207 (5th Cir. 2011) (internal citations omitted).

When reading the Complaint in the light most favorable to Houston, the electronic mail system is a rule or restriction controlling the inmate's ability to receive mail. Similarly, the accompanying two-week limit on accessing mail and increased delays in processing the mail are also identifiable intended conditions, as intent is presumed by the existence of the condition. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996) ("[A]n avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction."). Thus, the issue presented is whether the policy and the two accompanying conditions are not reasonably related to a governmental interest and violate Houston's constitutional rights.

An interference with a right to a detainee's ability to receive mail may violate the First and Fourteenth Amendments.[4] However, an inmate's right to receive mail is not absolute, and may be limited by a practice or policy that is reasonably related to "the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). However, these restrictions must be no greater than necessary to protect said penological interests. *Every v. Jindal*, 413 Fed. Appx. 725, 727 (5th Cir. 2011).

When evaluating the reasonability of a policy or practice that regulates incoming inmate mail, courts use a 4-factor test outlined in *Turner v. Safley*. *Samford*, 562 F.3d at

---

[4] Under the Fourteenth Amendment, interference with an inmate's mail may also violate their constitutional right of access to the courts. However, Houston states that he is still able to receive physical legal mail, and that any legal mail transmitted through Jailatm.com is not subject to automatic deletion. Dkt. Nos. 1 at 16, 16 at 4. Because Houston does not allege that the platform interferes with his ability to access the courts, the undersigned will not evaluate this issue.

678. First, courts assess whether there is a "valid, rational connection" between the prison policy and the prison's purported legitimate governmental interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Second, courts determine if inmates have an alternative means of exercising the affected right. *Id*. at 90. Third, courts consider if accommodation of the right would create a significant "ripple effect" on staff, inmates or allocation of the prison's resources. *Id*. Finally, courts consider whether there are alternative approaches "that fully accommodate[] the prisoner's rights at de minimis cost to valid penological interests[.]" *Id*. at 91.

The *Turner* factors are not weighted equally; instead, the first factor is controlling. *Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008); *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 81 (5th Cir. 1992) (noting that the second, third, and fourth *Turner* factors merely help a court determine if the first factor is met). When engaging in this analysis, courts are to afford substantial deference to prison administrators and their decisions. *Turner*, 482 U.S. at 89 ("Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.").

There is considerable overlap between the elements of a condition-of-confinement claim under *Duvall* and the factors used to evaluate the constitutionality of inmate mail restrictions under *Turner*.[5] For this reason, the undersigned will examine each of Houston's

---

[5] The second element of *Duvall* and the first *Turner* factor both assess whether the challenged practice is reasonably related to a legitimate government interest. *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207

First Amendment claims using the *Turner* factors, then address how each analysis maps onto *Duvall*.

> a. *Constitutionality of Using Jailatm.com Digital-only Mail System*

Houston's Complaint fails to adequately plead that TCADC's use of the Jailatm.com digital mail system is an unreasonable restriction of his First Amendment rights under *Turner*; consequently, his Complaint also fails to state a condition-of-confinement claim under *Duvall*.

Under the first and controlling *Turner* factor, the Fifth Circuit recognizes that detecting and confiscating contraband is a legitimate penological objective. *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993). Further, courts in other circuits have recognized that there is a valid connection between use of a digital mailing platform and the objective of reducing the presence of contraband within the facility. *See Wicks v. Hopkins Cnty.*, No. 4:20-CV-001110JHM, 2021 WL 5140947, at *2–3 (W.D. Ky. Nov. 3, 2021); *Sanchez-Martinez v. Freitas*, No. 23-CV-02508-HSG, 2024 WL 4309277, at *7 (N.D. Cal. Sept. 26, 2024). Accordingly, the undersigned finds that a "logical connection" exists between TCADC's implementation of Tech Friends's digital mail system and a valid penological interest.

The remaining *Turner* factors further support this conclusion. Turning to the second factor, even a favorable reading of Houston's complaint indicates that TCADC provides a

---

(5th Cir. 2011); *Turner v. Safley*, 482 U.S. 78, 89 (1987). In addition, a showing under *Turner* that a challenged practice doesn't violate a detainee's constitutional rights would negate the third *Duvall* element, which requires the detainee demonstrate that the challenged policy violated their constitutional rights.

reasonable opportunity for Houston to receive mail. Houston himself concedes that he can access his mail through the platform; his constitutional claim is instead based on his inability to physically access his mail. However, the right to receive mail is not absolute; it is well-settled that regulation of prison mail is the "right and responsibility" of prison officials. *See Heft v. Caroslon,* 489 F.2d 268, 269 (5th Cir. 1973) ("It is firmly established that prison authorities have the right and responsibility to regulate correspondence of inmates."). While digital mail services such as Jailatm.com are relatively novel in the correctional context, the undersigned is persuaded that the First Amendment does not guarantee a distinct right to *physically* possess one's mail.

The third and fourth *Turner* factors also support a finding that the digital mail platform is reasonable. Houston argues that inmates are entitled to their physical mail, and that to facilitate this right TCADC staff is expected to manually inspect and deliver mail. Dkt. Nos. 16 at 7; 1 at 16. Accommodating this request would create a substantial ripple effect on TCADC and its staff by consuming a significant amount of TCADC resources and potentially exposing TCADC officer's to drugs and other dangerous contraband. In addition, manual inspection clearly imposes a non de minimis cost on TCADC's valid penological interests because it is a less effective method of excluding physical contraband; digital mail services eliminate the risk that inmates will acquire undetected contraband by keeping the physical mail off-site, while manual inspection reintroduces the risk of human error by bringing mail on-site. The alternative Houston proposes would clearly impede rather than support TCADC's valid interests. Based on the *Turner* factors, the undersigned

finds that the implementation of the digital mail system is reasonable.[6]

Houston argues that reduction of contraband is not a valid justification for adopting Tech Friends's mail platform because, under the prior system of manual inspection, "all mail is opened and inspected after being sorted out and anything being contraband or inappropriate is rejected[.]" Dkt. No. 1 at 17. However, that TCADC may have successfully inspected incoming mail prior to its contract with Tech Friends is not relevant to the *Turner* analysis. The question is not whether TCADC could or possibly did have an alternative system in place, but rather whether the viability of that prior approach renders the challenged practice an unreasonable "'exaggerated response' to prison concerns." *Turner v. Safley*, 482 U.S. 78, 90 (1987). As discussed above, the undersigned cannot find that the manual screening of physical mail is a reasonable alternative to their present policy, or that the digital system is an unreasonable response to valid concerns. Houston attempts to argue to the contrary, asserting that "under Jail Policy [TCADC] is supposed to have enough officers to assist with detainee's needs" and officers are still required to search through privileged mail that does not go through the platform. Dkt. Nos. 16 at 7, 1 at 16. However, the number of staff on duty at any given time and the tasks of those guards are the exact "day-to-day judgments" of prison administration entitled to judicial deference. *Turner*, 482 U.S. at 89. For these reasons, the undersigned concludes that Houston has failed to state a claim based on TCADC's use of a digital mail platform.

---

[6] Houston also fails to allege a condition-of-confinement claim under *Duvall* for the reasons discussed above. The second element is not satisfied because the digital-mail restriction is reasonably related to the legitimate government objective of keeping contraband out of TCJ's facilities; the third element is also not satisfied because TCJ's policy violate Houston's First Amendment rights, as the policy is a reasonable restriction of those rights based on the *Turner* test.

### b. Constitutionality of Delays in Mail Delivery

Houston's Complaint also fails to adequately plead that the delays in mail delivery caused by TCADC's use of the digital mail system are a constitutional violation. At the outset, several 5th Circuit courts have concluded that a mere delay in the delivery of mail is not a constitutional violation. *See, e.g., Jackson v. Barrick*, No. 6:23-CV-617-JDK-JDL, 2024 WL 1234950, at *2 (E.D. Tex. Mar. 22, 2024) ("[A]n allegation that a prisoner's mail was delayed, without more, is insufficient to show a violation of the First Amendment.") (quoting *Jones v. Lumpkin*, No. CV 4:21-3638, 2023 WL 4275476, at *9 (S.D. Tex. June 29, 2023)). Even without relying on these court holdings, an evaluation of the *Turner* factors leads the undersigned to the same conclusion in this case.

While the TCADC does not have a direct interest in delaying its inmates's mail, Houston alleges that the delays are caused by the process of digitizing the mail, which is in turn reasonably related to TCADC's legitimate penological objective—preventing inmates from acquiring contraband. The delays are therefore, at minimum, reasonably related to the objective of excluding contraband under the first and controlling *Turner* factor. The delays are also reasonable under *Turner* factor two because Houston has an alternative method of exercising his rights without encountering delays; Houston notes that he has access to a digital messaging platform in addition to receiving scanned mail that allows messages to be "received the same day or almost instantly[.]" Dkt. No. 1 at 24.

Factors three and four are also met because Houston's only proposed alternative to address the delays is to reinstitute manual inspection and delivery of physical mail, which as noted above is an unreasonable alternative that fails to achieve TCADC's valid

23

penological interest in excluding contraband. Because the delays are a reasonable condition under *Turner*, the undersigned concludes that Houston has also failed to state a condition-of-confinement claim based on the delays in mail delivery.[7]

### c. Constitutionality of Two-Week Restriction on Mail Access

Houston's Complaint adequately pleads that deleting his personal mail after two weeks is a constitutional violation. The two-week limit is not reasonably related to TCADC's legitimate penological objectives because TCADC's interest in preventing contraband is satisfied by the digital mode of delivery, not the amount of time inmates have access to their mail. In addition, the two-week limit is not an inherent consequence of the digitization process, as the delays in delivery were; Houston alleges that legal mail delivered through Jailatm.com is not deleted after two weeks, while personal mail is. Dkt. No. 16 at 4. This demonstrates that the two-week restriction is not an inherent limitation of the digital platform and is thus not implicitly related to the valid purposes that justified use of the digital platform.

While the first factor is controlling, the remaining *Turner* factors further support this conclusion. The second *Turner* factor weighs in Houston's favor because he has no alternative means of accessing his mail digitally once it is deleted by Tech Friends; in fact, Houston cannot even access his mail *physically* once he is released, as the original mail and images are allegedly destroyed after they are digitized.[8] Dkt. No. 1 at 24.

---

[7] Because the delays are reasonably related to the valid government interest in excluding contraband, and do not violate Houston's constitutional rights based on the *Turner* factors, Houston's claim also fails to satisfy the second and third elements of *Duvall*.

[8] TCJ alleges that inmates are given the option to download their non-privileged mail upon release, which would suggest that the mail is not permanently destroyed once deleted. Dkt. No. 21 at 3. However, Houston

The third and fourth *Turner* factors also indicate that this condition is unreasonable. Unlike with the delay in delivery, where the only viable alternative was to process mail physically, an obvious alternative raised by Houston's complaint is to remove the 2-week limit on personal mail; the fact that this is already the case for legal mail suggests, at least at this pre-discovery phase, that this is a possible alternative that would protect Houston's rights.[9] This approach would certainly create costs for Tech Friends, but the third *Turner* factor considers only costs that would be imposed on TCADC, not private third parties; aside from potentially having to pay more for perpetual storage, TCADC's operations would be otherwise unaffected. In addition, this alternative would impose de minimis costs on TCADC's valid interest in excluding contraband, as all mail and potential contraband would remain off-site. For these reasons, the undersigned concludes that Houston has adequately stated a claim based on the two-week restriction on inmate personal mail.

The undersigned therefore RECOMMENDS that Houston's First Amendment claims as to use of the digital mail system and the resulting delays in delivery be DISMISSED without prejudice for failure to state a claim, but that his claim as to the 2-week limit on accessing personal mail SURVIVE judicial screening.

### 2. Property Deprivation Claim

---

alleges that he was never informed about this option, and the prisoner's handbook submitted by TCK does not mention it either. Dkt. Nos. 23 at 1–2, 21 at 6–17. At this screening stage, TCJ's bare allegation that inmate mail can be retrieved post-release cannot overcome the claimant's well-pleaded allegations to the contrary.

[9] Houston also argues that Central Processing should return their mail to the original sender rather than destroy it after digitization. Dkt. No. 1 at 24. Again, nothing in Houston's pleadings suggests this alternative is impossible or unreasonable. On the contrary, TCJ's requirement that all personal mail received by inmates have a return address would facilitate this solution. Dkt. No. 21 at 10, 16.

Houston also alleges that TCADC's adoption of the electronic mail system deprived him of his property in violation of the Fourteenth Amendment. Even if withholding Houston's physical mail and providing only digital scans of his mail was a wrongful deprivation of property, the appropriate remedy would be through a state-law conversion claim, not a claim under § 1983. *See Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) ("In Texas, when an inmate's property is taken without compensation, his remedy is in state court, not federal court.") (citing *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983)). The undersigned therefore RECOMMENDS that Houston's deprivation of property claim be DISMISSED without prejudice.

### C. Whether Houston has stated a claim against Sheriff Bishop or the unnamed Sergeant based on the defective phone

Houston also brings the following claims against Sheriff Bishop in his official capacity, and the unnamed Sergeant in his official and personal capacities: (1) deliberate indifference and negligence claims against Sheriff Bishop and the unnamed Sergeant based on their failure to repair a defective phone; and (2) condition-of-confinement claims against Sheriff Bishop for his failure to abate the unsafe condition of the inmate phones generally.[10]

#### 1. Deliberate Indifference Based on Failure to Repair

Houston alleges that TCADC's failure to repair the defective phone which later shorted and shocked him was deliberate indifference to his safety as a detainee. Houston alleges that he placed a work order informing an unnamed Sergeant that one of the phones

---

[10] Houston has also alleged that Correct Solutions is also liable for their failure to perform "preventative maintenance." Dkt. No. 1 at 23. Because Correct Solutions is not a state actor for § 1983 purposes, only Houston's claims against TCJ and its officers are considered here.

had a "short in the cord[.]" Dkt. No. 1 at 17. When Houston used the phone two weeks later, it had still not been fixed. Dkt. No. 16 at 2. As a result, Houston was shocked while using the phone and that the breaker was blown. Dkt. No. 1 at 23. Houston's claim against TCADC for failure to repair is properly characterized as an episodic act or omission.[11]

To bring an episodic act or omission claim, Houston must allege facts showing that the defendant was subjectively aware of a substantial risk of serious harm to detainees, and disregarded the risk by "failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). An allegation of deliberate indifference cannot be satisfied by alleged negligence; the claimant must allege intentional disregard of risk to the detainee. *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) ("Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.").

Houston's claim against Sheriff Bishop in his official capacity fails because Houston does not make any allegation of subjective knowledge on his part. Instead, Houston alleges generally that TCADC has a duty to ensure inmate safety under federal common law, Texas tort law, and TCADC policy. Dkt. No. 16 at 9. These general claims fall short of alleging the subjective awareness of a substantial risk required to bring a deliberate indifference claim.

---

[11] Houston's claim cannot be characterized as a condition-of-confinement claim. Such a claim requires the baseline allegation of a rule, policy, or pervasive pattern or practice existing. *Duvall v. Dallas County, Texas*, 631 F.3d 203, 207 (5th Cir. 2011). Houston does not allege that TCADC has a policy against repairing their phones, as he states that the phone provider Correct Solutions did perform repairs on the phones prior to the accident, although they failed to fix the phone in question. Dkt. Nos. 1 at 23, 16 at 3, 7. Houston also does not allege that a *pervasive* pattern or practice exists, as he notes that phones in other parts of the facility were functional. Dkt. No. 16 at 2.

Houston's claims against the unnamed Sergeant in their official and personal capacities are also insufficient. Houston properly alleges subjective awareness on the part of the Sergeant because he alleges that the Sergeant received his work order describing the defective phone. Dkt. No. 1 at 20, 23. However, Houston's Complaint still fails to allege facts indicative of deliberate indifference for three reasons. First, Houston's April 8th work order characterizes the short as a problem because the "phone [was] not working at all," not because the short presented a physical risk. Dkt. No. 1 at 20. It is true that a sufficiently obvious risk can create an inference of subjective awareness. *Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.") However, the risk posed by a short circuit that merely renders a phone unusable—the problem described by Houston's work order—is not sufficiently obvious to persuade the undersigned that the Sergeant was subjectively aware of a *substantial* risk of *serious* harm.

Second, Houston's Complaint describes efforts undertaken by TCADC staff to repair defective phones both before and after he was shocked. When the phones across TCADC stopped working, prison officials called in Correct Solutions to repair the issue. Dkt. No. 1 at 23. Similarly, TCADC replaced the defective phone once they were informed that it had shocked Houston. Dkt. Nos. 1 at 23, 16 at 8. Facts indicating that officials made efforts to fix an issue weigh against an inference that those officials were deliberately indifferent to risks faced by an inmate. *Gobert v. Caldwell*, 463 F.3d 339, 351–52 (5th Cir. 2006) (recognizing a "record of extensive medical treatment" as evidence that a prison official was not deliberately indifferent to the claimant's medical needs).

Lastly, Houston's claims are not based on an alleged disregard of known risks, but instead from the prison's duty to ensure a detainee's health and safety under "federal common law and Texas Tort [law.]" Dkt. No. 16 at 9. The fact that Houston bases his allegations against TCADC and the unnamed Sergeant on their breach of duty rather than their subjective intent suggests that his claim is more properly characterized as a negligence claim, not a deliberate indifference claim. An allegation of negligence is insufficient to meet the more exacting standard of deliberate indifference, which requires culpability amounting to "an intentional choice." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018). Nowhere in Houston's Complaint does he allege that TCADC or the unnamed Sergeant made such an intentional choice.

For these reasons, the undersigned recommends that Houston's deliberate indifference claims based on the defective phone cord be DISMISSED without prejudice for failure to state a claim.

### 2. *Negligence Based on Failure to Repair*

Houston also alleges that TCADC's failure to repair the damaged phone makes them liable for negligence. Even taking Houston's allegations as true and assuming the alleged omissions were negligent, Houston cannot bring a claim for ordinary or even gross negligence under § 1983; the standard for evaluating an episodic act or omission is deliberate indifference. *Farmer*, 511 U.S. at 847; *Shumpert*, 905 F.3d at 316 ("Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence[.]"). To recover against TCADC or its officers based on alleged negligence, Houston must instead bring a tort claim in state court. The undersigned therefore

29

recommends that Houston's negligence claims be DISMISSED without prejudice for failure to state a claim.[12]

### 3. Condition of Confinement Claim Based on Failure to Abate Safety Hazard

Lastly, Houston alleges that the condition of the phones at TCADC presented a safety risk that TCADC failed to abate. Houston alleges that the phones provided to detainees were made of metal with uninsulated metal wires inside, and specifically that the cords were not insulated using rubber. Dkt. Nos. 1 at 23, 16 at 5. Houston's claim against Sheriff Bishop for failure to repair is properly characterized as a condition-of-confinement claim.[13]

Houston's claim alleges sufficient facts to bring a condition-of-confinement claim under *Duvall*. First, the dangerous use of uninsulated wires in metal casing is an intended condition, as a State's intent is "presumed when it incarcerates the detainee in the face of such known conditions[.]" *Duvall v. Dallas County, Texas*, 631 F.3d 203, 207 (5th Cir. 2011); *see also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–45 (5th Cir. 1996) ("[A] true jail condition case starts with the assumption that the State intended to cause the pretrial detainee's alleged constitutional deprivation."). Houston's awareness of the flaw in

---

[12] To the extent that Houston also alleges that TCJ or its officers are liable under a negligence theory for the general condition of their phones, as discussed in the condition-of-confinement claim below, these claims must also be DISMISSED for failure to state a claim.

[13] Condition-of-confinement claims are commonly based on deliberate indifference to health risks or risks of violence, but the State is constitutionally bound to provide all basic needs for detainees and prisoners, including "reasonable safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989)). The safety of prison facilities and grounds can therefore be the basis for a condition-of-confinement claim, so long as the deficiency alleged is sufficiently serious.

the phone design, along with its alleged ubiquity throughout TCADC, supports an inference that the lack of wire insulation was a known condition rather than one that was concealed. Second, it is clear that no legitimate government objective is fulfilled by the use of uninsulated wires within metal phones. As such, the issue presented is whether the unsafe condition of the phones violated Houston's constitutional rights.

When assessing a condition-of-confinement claim raised by a pre-trial detainee, the constitutional basis of the claim is that the condition is an unlawful punishment of a detainee who has not yet been found guilty. *Hare*, 74 F.3d at 639. While a court must find such a condition lawful if it is reasonably related to a legitimate government purpose, the absence of such a purpose merely *permits* the inference of an unlawful intent to punish. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). A condition of confinement, even a harmful one, does not create such an inference if the constitutional violation is de minimis; to overcome this bar, the claimant must allege a "pervasive pattern of serious deficiencies[.]" *Duvall*, 631 F.3d at 208.

Taking as true Houston's allegation that phones at TCADC use uninsulated wires, the alleged deficiency is sufficiently serious to overcome the de minimis bar. Notably, Houston alleges that *all* phones in TCADC use the same flawed design, as well as the cords used on the visitation monitors. Dkt. No. 16 at 5. This indicates that the safety issue is indeed pervasive throughout TCADC, rather than an isolated issue. Houston further alleges that this problem arose from TCADC's failure to implement "preventative maintenance," which would be a pervasive issue rather than an isolated incident. Dkt. No. 16 at 5.

It is true that condition-of-confinement cases typically require a stronger showing

31

of the severity of the risk, typically based on expert testimony, but at this early screening stage it is sufficient that "[Houston's] complaint contains the full theory of the case." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 453 (5th Cir. 2009). His Complaint here does so: Houston alleges that TCADC phones posed a serious danger to detainees because the internal wires lacked proper rubber insulation, and that this condition was caused by TCADC's gross failure to adequately maintain the phones. Thus, Houston has properly alleged sufficient facts for his claim to survive screening. The undersigned therefore recommends that Houston's condition-of-confinement claim against Sheriff Bishop SURVIVE judicial screening.

### VI.  LEAVE TO AMEND

Still, there is the issue of whether the Court must give Houston leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

Pro se plaintiffs should ordinarily be given leave to amend prior to the dismissal of their claims, but when the Court provides the plaintiff a questionnaire, plaintiff's answers "act as an amendment to [the] pro se plaintiff's complaint." *Ravey v. Collier*, No. 7:22-CV-056-M-BP, 2023 WL 2483489, at *4 (N.D. Tex. Feb. 14, 2023), *report and rec. adopted*

32

*sub nom.*, 2023 WL 2481608 (N.D. Tex. Mar. 13, 2023) (citing *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994)). Thus, if a "prisoner has filed his complaint and submitted questionnaire responses, then the Court may conclude he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Bell v. Smith*, No. 7:22-CV-00033-M-BP, 2022 WL 10177702, at *4 (N.D. Tex. Aug. 2, 2022), *report and rec. adopted*, 2022 WL 10207659 (N.D. Tex. Oct. 17, 2022) (citing *Witherspoon v. Waybourn*, No. 4:20-CV-1150-P, 2021 WL 2635917, at *10 (N.D. Tex. June 25, 2021)).

Here, the undersigned concludes that Houston has pleaded his best case. Houston has been allowed to supplement his pleadings through two Questionnaires, making it unlikely that further facts could be pled that would properly state a claim under § 1983. In addition, leave to amend would be entirely futile in his negligence and property deprivation claims, as such claims by law cannot be brought under § 1983. Accordingly, the undersigned finds that further leave to amend would be futile.

## VII.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court DISMISS the following claims without prejudice: (1) Houston's claims against Correct Solutions and Tech Friends, Inc. without prejudice; (2) Houston's First Amendment claims against Sheriff Bishop based on use of Jailatm.com and the resulting delays; (3) Houston's property deprivation claims against Sheriff Bishop; (4) Houston's deliberate indifference claim against Sheriff Bishop and the unnamed Sergeant; and (5) Houston's negligence claims against Sheriff Bishop and the unnamed Sergeant.

Conversely, the undersigned RECOMMENDS that the following claims SURVIVE judicial screening: (1) Houston's First Amendment claim against Sheriff Bishop based on the two-week limitation on mail access; and (2) Houston's condition-of-confinement claim against Sheriff Bishop based on the uninsulated inmate phones.

## VIII. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX. TRANSFER OF CASE

Having completed the preliminary screening of Houston's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District

34

Judge James Wesley Hendrix and designated as Civil Action No. 1:23-CV-00145-H. *See*

Special Order No. 3-355.

ENTERED this 28th day of August 2025.

 

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE